UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LANCE NISTLER,<br><br>    Plaintiff,<br><br>v.<br><br>TIM WALZ, in his official capacity as Governor of the State of Minnesota, and THOM PETERSEN, in his official capacity as Commissioner of the Minnesota Department of Agriculture,<br><br>    Defendants. | Civil Action No. 24-cv-186 |

**COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES**

## INTRODUCTION

1. Lance Nistler is a lifelong Minnesotan. He has been farming since he was a boy. He's still a farmer today. His dream is to one day have his own farm near his home in Northern Minnesota.

2. Nistler, like many aspiring Minnesota farmers, has found the rising cost and shrinking availability of farmland in the state is crippling his dream of a family farm. Despite the obstacles, Nistler is not giving up on his dream. He is determined to buy 40 acres of farmland in Beltrami County, Minnesota, where he can grow soybeans, oats, and wheat.

3. Nistler's story is the precise reason the Minnesota Legislature adopted the Down Payment Assistance Grant Program. The program aims to slow the disappearance of

1

the state's proud and deeply rooted family farming culture by helping new farmers buy their first farms. The program offers up to $15,000 in grant funds toward the purchase of farmland.

4. When Nistler heard of the program, he saw his chance to make his dream a reality and applied for the latest round of grants. And, to his apparent luck, his application was one of the first few drawn in the program's lottery.

5. That's when his luck changed. The state denied his grant application. Despite Nistler being the model individual the state ought to be assisting with farm ownership, and despite being one of the first applications picked in the lottery, he lacked the state's preferred skin color and sex. His application was pushed to the back of the line, solely because of his race and sex.

6. Nistler brings this lawsuit to vindicate his constitutional right to equal protection of the law. He brings it to give all Minnesotans a fair chance at a difference-making grant program. He brings it in the hope that he will be able to own that small farm in the near future. He brings it because he is not giving up on his dream.

## JURISDICTION AND VENUE

7. This action arises under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as Defendants are residents of this judicial district and the state of Minnesota. Venue is also proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred or will occur in this district.

## PARTIES

9.     Plaintiff Lance Nistler is an individual who resides in Kelliher, Minnesota. Nistler applied for a grant from the Down Payment Assistance Grant Program on July 20, 2023, and is able and ready to apply for the grant program's next round of funding when it is released.

10.    Defendant Tim Walz is the governor of Minnesota. As Governor, Mr. Walz executes the laws of the state, including those implementing the Down Payment Assistance Grant Program. Mr. Walz also appoints state commissioners, including the commissioner of the Minnesota Department of Agriculture. Mr. Walz is sued in his official capacity.

11.    Thom Petersen is the commissioner of the Minnesota Department of Agriculture. Mr. Walz appointed Mr. Petersen as commissioner in 2019 and reappointed him in 2023. As the commissioner, Mr. Petersen has the responsibility of encouraging and promoting the development of the state's agricultural industries, as well as serving as the chairperson of the Rural Finance Authority, which assures the viability of farm operations and the financial stability of farmers in the state. Mr. Petersen is sued in his official capacity.

## FACTUAL ALLEGATIONS

### The Down Payment Assistance Grant Program

12. In November 2022, the Minnesota Department of Agriculture (MDA) announced the Down Payment Assistance Grant Program, which helps Minnesota farmers purchase their first farms. The program came from a $500,000 appropriation by the Minnesota Legislature in its fiscal year 2023 budget. Under the grant program, qualified small farmers could receive up to $15,000 to purchase farmland. To qualify, applicants were required to be Minnesota residents earning less than $250,000 annually in gross agricultural sales, provide the majority of day-to-day labor on the farm they planned to purchase for at least five years, and could not have previously owned farmland.

13. When applications opened in January 2023, the grant program almost instantly garnered enough applications to meet its waitlist cap. The MDA Rural Finance Authority (RFA) administered the grant program and awarded the funding on a first-come, first-served basis.

### The Program Is Amended to Give Preference on the Basis of Race and Sex

14. In light of the grant program's immense popularity, the Minnesota Legislature approved additional rounds and increased its funding. On May 12, 2023, Governor Walz signed Senate File 1955, the "Agriculture, Broadband, and Rural Development Bill." The bill doubled the funding for the program's second round of grants, making a total of $1 million available to eligible farmers in 2023. Another $1 million would be available for a third round of funding in the summer or fall of 2024.

15. But the latest bill significantly changed how the funds would be awarded. Instead of awarding funds on a first-come, first-served basis, the bill requires the MDA to prioritize "emerging farmers," as set forth in section 17.055 of Minnesota Statutes.

16. Section 17.055 refers to emerging farmers as those who are women, veterans, persons with disabilities, American Indian or Alaskan Natives, members of a community of color, young, LGBTQIA+, or urban, and any other emerging farmers as determined by the MDA commissioner.

17. On June 12, 2023, the RFA announced that applications would be accepted from July 1 to July 31, 2023, for the second round of Down Payment Assistance Grant Program funding.

18. Qualified farmers could again receive up to $15,000 to purchase farmland within the state of Minnesota. To qualify, applicants must:

- Be a Minnesota resident;
- Purchase farmland as an individual or married couple;
- Be in good standing with the state of Minnesota;
- Provide most of the physical labor and management on the farm to be purchased;
- Plan to own the farmland to be purchased for at least five years;
- Agree that they will pay a penalty to the commissioner equal to 20 percent of the grant amount for each year they do not own and farm the land during the five-year period;

- Have not, and whose spouse has not, previously had direct or indirect ownership in farmland or other agricultural property;
- Have grossed less than $250,000 from the sale of farm product in the most recent tax year; and
- Have not been convicted of a criminal offense related to a state grant agreement.

19. Applicants were required to match the funding they are awarded with at least $8,000 of other funding, such as through cash, loans, or other grants. If the applicant matched the award with less than $8,000, the maximum grant award they would receive would be equal to the matching amount they provide. The grant may only be used toward a purchase that closes after approval of the grant application, and the purchase must be completed within six months after the application is approved, or by June 30, 2024, whichever is sooner.

20. To determine the order in which grants would be awarded, all eligible applications would be randomly drawn in a lottery. After the initial lottery, the applications would be reordered to provide emerging farmers preference over nonemerging farmers.

21. The RFA expected to award approximately 66 grants in the second round of funding. If funding remains after the RFA has awarded grants to all eligible emerging farmer applicants, the RFA will award as many grants as funding allows to nonemerging farmers in the order of their lottery placement. A true and correct copy of the grant program guidelines appears at Exhibit A to this Complaint.

22. Because of the preference given to emerging farmers based on race, white applicants receive a preference in the lottery only if they satisfy a separate criterion. Minority applicants, on the other hand, are automatically preferred without needing to satisfy a separate criterion. Likewise, the preference given to emerging farmers based on sex means males may be preferred in the lottery only if they satisfy a separate criterion, while women are automatically preferred without needing to satisfy any other criteria.

23. Applicants for the second round of funding were able to complete the grant program application online at the MDA's website or email a copy of the application to the RFA.

24. Instructions on the grant program application reiterated that the MDA gives preference to emerging farmers and defined emerging farmers to include

> farmers or aspiring farmers who are women, veterans, persons with disabilities, American Indian or Alaskan Natives, members of a community of color, young (35 and younger), lesbian, gay, bisexual, transgender, queer, intersex, or asexual (LGBTQIA+), urban (reside in cities with a population over 5,000 or within the boundaries of federally recognized tribal land regardless of population size), and any other emerging farmers as determined by the commissioner.

As such, applicants are required to indicate on the application whether they are emerging farmers. A true and correct copy of the grant program application appears at Exhibit B to this Complaint.

**Plaintiff Is Denied a Down Payment Assistance Grant Because of His Race and Sex**

25. On July 20, 2023, Nistler submitted an online application for grant funds from the Down Payment Assistance Grant Program to purchase farmland.

7

26. Mr. Nistler indicated on his application that he satisfied all of the requirements to be eligible for a grant: he is a Minnesota resident; the farmland he wants to purchase is located within the state and he will purchase it as an individual; he agrees to pay the specified penalty for each year he does not own and farm the land during the requisite five-year period; he is in good standing with the state; he would provide the majority of physical labor and management for the farm; neither he nor his spouse have previously owned farmland or other agricultural property; he did not gross more than $250,000 from the sale of farm product in the most recent tax year; and he has never been convicted of a criminal offense related to a state grant agreement.

27. However, as a white male, Mr. Nistler could not mark on his application that he is an emerging farmer.

28. In August 2023, the RFA conducted a lottery of the grant applications. Mr. Nistler's application was drawn ninth. However, in implementing the preference for emerging farmers, the MDA subsequently rearranged the order of the applications, causing Mr. Nistler to be ranked 102nd on the waitlist.

29. The MDA awarded 68 applicants with grant funding. One-hundred-and-one applicants on the waitlist would receive grants before Mr. Nistler if any funding remains.

30. Because of where his application was drawn in the lottery, Nistler would have received a grant if he was from a "community of color."

31. Because of where his application was drawn in the lottery, Nistler would have received a grant if he was a woman.

32. To date, Mr. Nistler has not received any funds from the Down Payment Assistance Grant Program. He intends to apply for funds from the program's third round of funding when applications become available in the summer or fall of 2024. That round will have the same eligibility criteria, preference for emerging farmers, conditions, and lottery process for selecting awardees as the last round in which Nistler applied.

## CLAIMS FOR RELIEF

### First Cause of Action
### (42 U.S.C. § 1983 – Violation of the Equal Protection Clause)

33. Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

34. Those aggrieved by constitutional violations undertaken by state actors acting under color of law have a private right of action under 42 U.S.C. § 1983.

35. State actors and their agents, under the color of state law, have enacted and enforced, and will continue to enact and enforce, the state's preference for minority and women farmers in the awarding and administering of grant funds, including funds awarded under the Down Payment Assistance Grant Program. Defendants authorized, developed, and implemented the state's preference for minority and women farmers.

36. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

37. Minnesota's preference for minority farmers in the awarding and administering of grant funds, including funds awarded under the Down Payment Assistance

9

Grant Program, is subject to strict scrutiny because it classifies individuals based on their race.

38. Defendants do not have a compelling interest in preferring minority farmers in the awarding and administering of grant funds, including funds awarded under the Down Payment Assistance Grant Program.

39. Defendants' preference for minority farmers in the awarding and administering of grant funds, including funds awarded under the Down Payment Assistance Grant Program, is not narrowly tailored to a compelling government interest.

40. Minnesota's preference for women farmers in the awarding and administering of grant funds, including funds awarded under the Down Payment Assistance Grant Program, is subject to intermediate scrutiny because it classifies individuals based on their sex.

41. Defendants do not have an exceedingly persuasive objective for preferring women farmers in the awarding and administering of grant funds, including funds awarded under the Down Payment Assistance Grant Program.

42. Defendants' preference for women farmers in the awarding and administering of grant funds, including funds awarded under the Down Payment Assistance Grant Program, is not substantially related to an exceedingly persuasive objective.

### Second Cause of Action
### (42 U.S.C. § 1981 – Deprivation of Civil Rights Based on Race)

43. Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

44. Section 1981 prohibits discrimination on the basis of race and protects the right of all persons in every State to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property.

45. Defendants violate section 1981 by purposefully and willfully denying Plaintiff the equal opportunity to be considered for a grant under the Down Payment Assistance Grant Program because of Plaintiff's race.

46. Defendants' actions are in accordance with an official policy and custom of the state of Minnesota, specifically and not limited to section 17.055, subdivision 3, of the Minnesota Statutes, and the Down Payment Assistance Grant Program, which require the state to prefer minority applicants in the awarding and administering of grants. Defendants' actions caused the deprivation of Plaintiff's rights.

47. Plaintiff is a member of the racial category that Defendants disfavor for the awarding of a grant under section 17.055, subdivision 3, of the Minnesota Statutes, and the Down Payment Assistance Grant Program. Defendants were aware of Plaintiff's race at the time Defendants considered Plaintiff's application for a grant and carried out the race-based preference in determining recipients of the grant. Defendants' deprivation of Plaintiff's rights occurred due to Plaintiff's race.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Declare Minnesota's preference for minority and women applicants in the awarding and administering of grants in section 17.055, subdivision 3, of the Minnesota Statutes and the Down Payment Assistance Grant Program

unconstitutional under 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

(b) Permanently enjoin Defendants and their agents from enforcing or giving any effect to Minnesota Statutes and any other policy, practice, or procedure that prefers minority and women applicants for the awarding and administering of down payment assistance grants, including in section 17.055, subdivision 3, of the Minnesota Statutes, and the Down Payment Assistance Grant Program, and from otherwise discriminating on the basis of race and sex in the awarding and administering of such grants.

(c) Issue an award of attorneys' fees and costs in this action pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988;

(d) Issue an award of nominal damages in the amount of $1.00; and

(e) Provide such other and further relief as the Court deems just and proper.

DATED:  January 24, 2024.

Respectfully submitted,

Andrew R. Quinio *
Cal. Bar No. 288101
Joshua P. Thompson*
Cal. Bar No. 250955
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Tel.: (916) 419-7111
Fax: (916) 419-7747
AQuinio@pacificlegal.org
JThompson@pacificlegal.org

/s/ James V. F. Dickey
James V. F. Dickey
Minn. Bar No. 393613
Upper Midwest Law Center
8421 Wayzata Boulevard, Suite 300
Golden Valley, Minnesota 55426
Tel.: 612-428-7000
james.dickey@umlc.org

*Pro Hac Vice motions forthcoming

*Counsel for Plaintiff*